## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EARL M. WHEBY, JR., Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) ) | JURY TRIAL DEMANDED |
| OHR PHARMACEUTICAL, INC., MIKE FERGUSON, JASON SLAKTER, ORIN HIRSCHMAN, THOMAS M. RIEDHAMMER, JUNE S. ALMENOFF, NEUBASE THERAPEUTICS, INC., and OHR ACQUISITION CORP., | ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action stems from a proposed transaction announced on January 3, 2019 (the "Proposed Transaction"), pursuant to which Ohr Pharmaceutical, Inc. ("Ohr" or the "Company") will merge with NeuBase Therapeutics, Inc. ("NeuBase").

2.      On January 2, 2019, Ohr's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with NeuBase and Ohr Acquisition Corp. ("Merger Sub").

3.      On March 8 2019, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4.      The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Ohr common stock.

9.      Defendant Ohr is a Delaware corporation and maintains its principal executive offices at 800 Third Avenue, 11th Floor, New York, New York 10022.  Ohr's common stock is traded on the NasdaqCM under the ticker symbol "OHRP."

10.      Defendant Mike Ferguson is Chairman of the Board of the Company.

11.      Defendant Jason Slakter is a director and Chief Executive Officer ("CEO") of the Company.

12.     Defendant Orin Hirschman is a director of the Company.

13.     Defendant Thomas M. Reidhammer is a director of the Company.

14.     Defendant June S. Almenoff is a director of the Company.

15.     The defendants identified in paragraphs 10 through 14 are collectively referred to herein as the "Individual Defendants."

16.     Defendant NeuBase is a Delaware corporation and a party to the Merger Agreement.

17.     Defendant Merger Sub is a Delaware corporation and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Ohr (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

19.     This action is properly maintainable as a class action.

20.     The Class is so numerous that joinder of all members is impracticable.  As of January 2, 2019, there were approximately 5,164,177 shares of Ohr common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

21.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

22.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.

Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

23.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

24.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

<u>**SUBSTANTIVE ALLEGATIONS**</u>

***Background of the Company and the Proposed Transaction***

25.     Ohr is a clinical-stage pharmaceutical company that develops novel therapies for ophthalmic diseases.

26.     The Company has completed two clinical trials with squalamine lactate ophthalmic solution, 0.2%, for the treatment of the wet form of age-related macular degeneration.

27.     In addition, Ohr has a sustained-release micro-fabricated micro-particle ocular drug delivery platform technology.

28.     On January 2, 2019, Ohr's Board caused the Company to enter into the Merger Agreement with NeuBase.

29.     Subject to the terms and conditions of the Merger Agreement, at the effective time of the Proposed Transaction: (i) each outstanding share of NeuBase common stock will be converted into the right to receive the number of shares of the Company's common stock equal to

the exchange ratio described below; (ii) each outstanding NeuBase stock option that has not previously been exercised prior to the effective time of the merger will be assumed by the Company; and (iii) the warrant to purchase shares of common stock of NeuBase will be converted into and become a warrant to purchase shares of Company common stock.

30.     Under the exchange ratio formula in the Merger Agreement, as of immediately after the Proposed Transaction, the former NeuBase securityholders are expected to own approximately 80% of the aggregate number of shares of the Company common stock issued and outstanding following the consummation of the merger, and the stockholders of the Company as of immediately prior to the merger are expected to own approximately 20% of the aggregate number of post-closing shares.

31.     Immediately following the effective time of the merger, the name of the Company will be changed from "Ohr Pharmaceutical, Inc." to "NeuBase Therapeutics, Inc."

32.     According to the press release announcing the Proposed Transaction:

Ohr Pharmaceutical, Inc. ("Ohr") (Nasdaq: OHRP) announced today that it has entered into a definitive merger agreement with NeuBase Therapeutics, Inc. ("NeuBase"), under which the stockholders of NeuBase would become the majority holders of the combined company. The proposed merger will create a public company focused on advancing NeuBase's peptide-nucleic acid (PNA) antisense oligonucleotide (PATrOL™) technology platform for the development of therapies to address severe and currently untreatable diseases caused by genetic mutations.

Upon closing of the transaction, the combined company will change its name to "NeuBase Therapeutics, Inc." and propose its trading symbol on the NASDAQ be changed to "NBSE". The executive team of NeuBase will serve as the executive team of the combined company, led by Dietrich A. Stephan, Ph.D. as Chief Executive Officer. . . .

About the transaction
On a pro forma basis and based upon the number of shares of Ohr common stock to be issued in the merger, current Ohr stockholders will own approximately 20% of the combined company and NeuBase stockholders will own approximately 80% of the combined company, after accounting for the additional NeuBase financing transaction. The actual allocation will be subject to adjustment based on Ohr's and

NeuBase's cash balance at the time of closing and the amount of the additional financing consummated by NeuBase at or before the closing of the merger. Certain members and affiliates of the board of directors and management of Ohr and Neubase have indicated an intent to invest in the additional NeuBase financing transaction.

The proposed transaction has been approved by the board of directors of both companies. The merger is subject to the approval of Ohr shareholders at a special meeting of shareholders, which is expected to occur in the first half of 2019, along with the satisfaction or waiver of other customary conditions. . . .

Roth Capital Partners, LLC is acting as financial advisor to Ohr for the transaction and Troutman Sanders LLP is serving as legal counsel to Ohr. Allele Capital Partners, LLC at Tribal Capital Markets, LLC is acting as financial advisor and Paul Hastings LLP is serving as legal counsel to NeuBase.

33.     The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.  Sections 5.13(a) and (c) of the Merger Agreement provide:

(a) During the Pre-Closing Period, Parent will not and will not authorize or permit any of its Subsidiaries or any Representative of Parent or its Subsidiaries, directly or indirectly, to, (i) solicit, initiate, knowingly encourage, induce or facilitate the making, submission or announcement of any Acquisition Proposal or take any action that would reasonably be expected to lead to an Acquisition Proposal, (ii) furnish any nonpublic information regarding Parent or its Subsidiaries to any Person in connection with or in response to an Acquisition Proposal or an inquiry or indication of interest that could lead to an Acquisition Proposal, (iii) engage in discussions or negotiations with any Person with respect to any Acquisition Proposal, (iv) approve, endorse or recommend any Acquisition Proposal or (v) enter into any letter of intent or similar document or any agreement contemplating or otherwise relating to any Acquisition Transaction (other than an Acceptable Parent Confidentiality Agreement[.]

(c) Parent will immediately cease and cause to be terminated any existing discussions with any Person that relate to any Acquisition Proposal.

34.     Additionally, the Company must promptly advise NeuBase of any proposals or inquiries received from other parties.  Section 5.13(b) of the Merger Agreement provides:

(b) Parent will promptly (and in no event later than 24 hours after receipt of any Acquisition Proposal, any inquiry or indication of interest that could lead to an Acquisition Proposal or any request for nonpublic information) advise Company orally and in writing of any Acquisition Proposal, any inquiry or indication of interest that could lead to an Acquisition Proposal or any request for nonpublic information relating to Parent or its Subsidiaries (including the identity of the Person making or submitting such Acquisition Proposal, inquiry, indication of interest or request, and the material terms thereof) that is made or submitted by any Person during the Pre-Closing Period. Parent will keep Company informed on a prompt basis in all material respects with respect to the status of any such Acquisition Proposal, inquiry, indication of interest or request and any modification or proposed modification thereto.

35.     Moreover, the Merger Agreement grants NeuBase a "matching right" with respect to any "Superior Proposal" made to the Company.  Section 5.3(c) of the Merger Agreement provides:

(c) Notwithstanding anything to the contrary contained in Section 5.3(b), at any time prior to the approval of the Parent Stockholder Approval Matters by the Parent Stockholder Approval, the Parent Board Recommendation may be withdrawn or modified (a "Parent Change in Recommendation") if the board of directors of Parent concludes in good faith, after having taken into account the advice of Parent's outside legal counsel and financial advisors, that (x) as a result of Parent's receipt of an Acquisition Proposal that was not made in violation of Section 5.13 and that the board of directors of Parent has determined in good faith, after consultation with Parent's legal and financial advisors, constitutes a Superior Offer, or (y) as a result of a material development or change in circumstances (other than an Acquisition Proposal) that affects the business, assets or operations of Parent that occurs or arises after the date of this Agreement and that was neither known to Parent or its board of directors nor reasonably foreseeable as of the date of this Agreement (a "Parent Intervening Event"), the Parent Change in Recommendation is required in order for the board of directors of Parent to comply with its fiduciary obligations to the Parent Stockholders under applicable Legal Requirements; provided, however, that prior to Parent taking any action permitted under this Section 5.3(c), Parent shall provide Company with four (4) Business Days' prior written notice advising Company that it intends to effect such Parent Change in Recommendation and specifying, in reasonable detail, the reasons therefor (including, in the case of a Parent Acquisition Proposal, the information required by Section 5.13(b) and, in the case of a Parent Intervening Event, the material facts and circumstances related to the applicable Parent Intervening Event), and during such four (4) Business Day period, (i) Parent shall negotiate, and cause its Representatives to negotiate, with Company in good faith (to the extent Company wishes to negotiate) to enable Company to determine whether to propose revisions to the terms of this Agreement such that it would obviate the need for Parent's board

of directors to effect such withdrawal or modification, and (ii) Parent shall consider in good faith any proposal by Company to amend the terms and conditions of this Agreement in a manner that would obviate the need to effect such Parent Change in Recommendation.

36.     The Merger Agreement also provides for a "termination fee" of $250,000 payable by the Company to NeuBase if the Individual Defendants cause the Company to terminate the Merger Agreement.

37.     By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

38.     The consideration to be provided to plaintiff and the Class in the Proposed Transaction appears inadequate.

39.     Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

40.     Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

***The Registration Statement Omits Material Information, Rendering It False and Misleading***

41.     Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

42.     As set forth below, the Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

43.     The Registration Statement omits material information regarding the Company's and NeuBase's financial projections, as well as the analyses performed by the Company's financial

advisor in connection with the Proposed Transaction, Roth Capital Partners, LLC ("Roth").

44.     The Proxy Statement fails to disclose the "financial forecasts, relating to the business, earnings, cash flow, assets, liabilities and prospects of Ohr and NeuBase that were furnished to Roth by management of Ohr and NeuBase, respectively."

45.     With respect to Roth's *Initial Public Offering Comparables Analysis—NeuBase*, the Proxy Statement fails to disclose the individual enterprise value of the issuer in each of the IPOs observed by Roth in the analysis.

46.     With respect to Roth's *Publicly Traded Comparable Company Analysis—NeuBase*, the Proxy Statement fails to disclose the individual enterprise value of each company observed by Roth in the analysis.

47.     With respect to Roth's *Precedent Early Stage Merger and Acquisition Transactions—NeuBase*, the Proxy Statement fails to disclose the individual value of each transaction observed by Roth in the analysis.

48.     With respect to Roth's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) NeuBase's unlevered free cash flow projections, including the projected unlevered free cash flow that NeuBase is expected to generate during fiscal years 2019 to 2030 from its NT0100 and NT0200 programs, and all underlying line items; (ii) the "probability of success" adjustments; (iii) the terminal values used by Roth in the analysis; and (iv) Roth's basis for applying multiples of 1.0x, 1.5x, and 2.0x to total unlevered free cash flow estimates in year 2030.

49.     The Proxy Statement fails to disclose Roth's basis for not performing "a valuation of the enterprise value of Ohr using traditional valuation analyses such as the discounted cash flow analysis and trading comparables for Ohr as a stand-alone entity."

50.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

51.     The Proxy Statement also fails to disclose whether the Company entered into any confidentiality agreements that contained standstill and/or "don't ask, don't waive" provisions that are or were preventing the counterparties from submitting superior offers to acquire the Company.

52.     Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

53.     The omission of the above-referenced material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Background of the Merger; (ii) Ohr's Reasons for the Merger; Recommendation of the Ohr Special Committee and the Ohr Board of Directors; and (iii) Opinion of Ohr's Financial Advisor.

54.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated
Thereunder Against the Individual Defendants and Ohr**

55.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

56.     The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Ohr is liable as the issuer of these statements.

57.     The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

58.     The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

59.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

60.     The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

61.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

62.     Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and NeuBase

63.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64.     The Individual Defendants and NeuBase acted as controlling persons of Ohr within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Ohr and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

65.     Each of the Individual Defendants and NeuBase was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

66.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Registration Statement.

67.     NeuBase also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

68.     By virtue of the foregoing, the Individual Defendants and NeuBase violated Section 20(a) of the 1934 Act.

69.     As set forth above, the Individual Defendants and NeuBase had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated:  March 20, 2019

**RIGRODSKY & LONG, P.A.**

By:  */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)

**OF COUNSEL:**

300 Delaware Avenue, Suite 1220
Wilmington, DE 19801

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com

Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

14